IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

\* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| ROBERT LAMKIN, an individual, RAY BIDENOST, an individual, | ) ) ) | Civil No. 2:10-CV-00852-BSJ |
| Plaintiffs, | ) ) | **MEMORANDUM OPINION & ORDER RE: AWARD OF ATTORNEY'S FEES AND COSTS** |
| vs. | ) ) | |
| MORINDA PROPERTIES WEIGHT PARCEL, LLC, a Utah limited liability company, | ) ) ) ) | |
| Defendant. | ) | |

```
┌─────────────────────────────┐
│           FILED             │
│  CLERK, U.S. DISTRICT COURT │
│    July 16, 2012 (4:20pm)   │
│      DISTRICT OF UTAH       │
└─────────────────────────────┘
```

\* \* \* \* \* \* \* \* \*

On October 11, 2011, this court docketed the mandate of the court of appeals in the

above-entitled proceeding.  *See Robert Lamkin, et al., v. Morinda Properties Weight Parcel,*

*LLC*, Case No. 11-4022 (10th Cir., decided Sept. 19, 2011).  The court of appeals reversed this

court's prior order denying defendant Morinda's motion to compel arbitration[1] and remanded

"with directions for the referral of the dispute to arbitration and for an award of costs and

attorney fees to Morinda pursuant to the contract."  *Id.*  As to attorney's fees, the court of appeals

ruled:

> The contracts at issue provide that "in the event of . . . litigation to enforce the
> arbitration provisions of this Contract, the prevailing party shall be awarded its
> costs and reasonable attorney fees." Aplt. App. at 61, 73.  Invoking this mandatory
> provision, Morinda seeks an award of fees and costs in connection with its efforts

---

[1](See Order, filed January 24, 2011 (CM/ECF No. 16).)  The defendant's September 20,
2010 motion (CM/ECF No. 7) also sought to dismiss this action for lack of subject matter
jurisdiction.  This court's January 24, 2011 Order denied that motion, and that ruling was not
before the court of appeals on the defendant's interlocutory appeal pursuant to 9 U.S.C. §
16(a)(1)(A) & (B).

to compel arbitration.  In light of our disposition on the merits, we agree that Morinda is entitled to an award in an amount to be determined by the district court on remand.  Determination of the award is independent of, and hence should not interfere with, the prompt referral of the parties' underlying dispute to arbitration.

On November 23, 2011, Morinda filed a "Motion to Refer Parties to Arbitration and for Entry of Judgment Awarding Attorney's Fees and Costs Pursuant to Order of Tenth Circuit Court of Appeals," (CM/ECF No. 38), with an accompanying memorandum in support (CM/ECF No. 39).  On December 12, 2011, the plaintiffs filed a memorandum in opposition,[2] and the next day, the court entered an Order of Referral to Arbitration and Stay of Judicial Proceedings (CM/ECF No. 42).

The court then calendared a hearing on Morinda's motion for attorney's fees on February 17, 2012, which was continued at plaintiffs' request to March 28, 2012.  On March 28th, the court heard testimony and argument of counsel, received exhibits concerning the amount of fees and costs requested by Morinda, and took the matter under advisement.  (*See* Minute Entry, dated March 28, 2012 (CM/ECF No. 52).)  The next day, this court ordered counsel to supplement the record with a copy of everything that both parties had filed with the court of appeals,[3] which they did.[4]  Morinda also filed a supplemental memorandum in support of its attorney's fees request.[5]

---

[2](Memorandum in Opposition to Defendant's Motion for Entry Of Judgment Awarding Attorney's Fees and Costs Pursuant to Order of Tenth Circuit Court of Appeals, filed December 12, 2011 (CM/ECF No. 40).)

[3](*See* Order, filed March 29, 2012 (CM/ECF No. 51).)

[4](*See* plaintiff's Notice of Compliance with March 29, 2012 Order, filed April 2, 2012 (CM/ECF No. 53); defendant's Notice of Compliance with Court Order dated March 29, 2012 (CM/ECF No. 54).)

[5](Defendant's Supplemental Memorandum in Support of Motion for Entry of Judgment
(continued...)

-2-

On April 18, 2012, Morinda filed a supplemental request for additional attorney's fees and costs that purportedly "are reasonable because they were necessary to obtain an order compelling the parties to arbitrate,"[6] accompanied by a supplemental affidavit with exhibits.[7] The plaintiffs filed a memorandum in opposition,[8] and Morinda filed a reply.[9]  On June 7, 2012, the plaintiffs filed a request to submit for decision Morinda's supplemental request for fees and costs.[10]

As directed by the court of appeals' mandate, this court must now determine the proper amount of the award sought by Morinda as "its costs and reasonable attorney fees" pursuant to the terms of its contracts with the plaintiffs.

---

[5](...continued) Awarding Attorneys' Fees and Costs Pursuant to Order of Tenth Circuit Court of Appeals, filed April 3, 2012 (CM/ECF No. 55).)

[6](Motion for Entry of Judgment Awarding Supplemental Request for Attorney's Fees and Costs Pursuant to Order of Tenth Circuit Court of Appeals, filed April 18, 2012 (CM/ECF No. 56), at 2.)

[7](Supplemental Affidavit of Attorney's Fees and Costs, filed April 18, 2012 (CM/ECF No. 57).)

[8](Memorandum in Opposition to Defendant's Motion for Entry of Judgment Awarding Supplemental Request for Attorney's Fees and Costs Pursuant to Order of Tenth Circuit Court of Appeals, filed May 14, 2012 (CM/ECF No. 60).)

[9](Reply Memorandum of Law in Support of Motion for Entry of Judgment Awarding Supplemental Request for Attorneys' Fees and Costs Pursuant to Order of Tenth Circuit Court of Appeals, filed June 1, 2012 (CM/ECF No. 65).)

[10](Request to Submit for Decision, filed June 7, 2012 (CM/ECF No. 66)); *see* DUCivR 7-3.

**Morinda's September 20th Motion**

On August 25, 2010, the plaintiffs filed a complaint against Morinda, alleging default on contractual obligations and invoking the diversity jurisdiction of the court under § 1332.  On September 20, 2010, Morinda filed a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction,[11] arguing that because the plaintiffs' *claims* arose out of contracts containing an arbitration agreement and thus "fall squarely within the scope of the arbitration agreements," the "Plaintiffs cannot demonstrate that the Court has subject matter jurisdiction over this matter."[12]

Morinda's Rule 12(b)(1) motion was footed upon a dubious premise: Morinda assumed that *lack of jurisdiction* was the basis for dismissal in *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161 (5th Cir. 1992), a case cited by Morinda in which the district court had entered orders compelling arbitration of all claims pursuant to § 4 of the Federal Arbitration Act, and then dismissed the action with prejudice rather than staying further proceedings pending arbitration pursuant to § 3 of the Act.  In fact, according to the Fifth Circuit, "[b]ecause it determined that all of Alford's claims were subject to arbitration, the district court acted *within its discretion* when it dismissed this case with prejudice."  *Id.* at 1164 (emphasis added).

In contrast to the dismissal in *Alford*, dismissal by a district court for *lack of subject*

---

[11](Defendant Morinda Properties Weight Parcel, LLC, Motion to Dismiss, or, Alternatively, to Compel Arbitration and Stay Judicial Proceedings, filed September 20, 2010 (CM/ECF No. 7) ("Morinda Sept. 20th Motion").)

[12](Defendant Morinda Properties Weight Parcel, LLC, Memorandum in Support of Motion to Dismiss, or, Alternatively, to Compel Arbitration and Stay Judicial Proceedings, filed September 20, 2010 (CM/ECF No. 8) ("Morinda Sept. 20th Mem.") at 2, 7.)

*matter jurisdiction* is mandatory,[13] not "within its discretion," and dismissal for lack of subject

matter jurisdiction must be *without* prejudice because the court lacks the power to decide the

merits of the case.  *See, e .g.*, *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216, 1217 (10th

Cir. 2006) ("A longstanding line of cases from this circuit holds that where the district court

dismisses an action for lack of jurisdiction, as it did here, the dismissal must be without

prejudice," because "once a court determines it lacks jurisdiction over a claim, it perforce lacks

jurisdiction to make any determination of the merits"); *Albert v. Smith's Food & Drug Ctrs., Inc.*,

356 F.3d 1242, 1249 (10th Cir. 2004); *Martinez v. Richardson*, 472 F.2d 1121, 1126 (10th Cir.

1973) ("It is fundamental . . . that a dismissal for lack of jurisdiction is not an adjudication of the

merits and therefore . . . must be without prejudice."); *Herman Family Revocable Trust v. Teddy

Bear*, 254 F.3d 802, 806 (9th Cir. 2001)  ("Dismissal on jurisdictional grounds means that the

court was without original jurisdiction and had no authority to do anything other than to

determine its jurisdiction.").[14]

Moreover, in *Adair Bus Sales, Inc. v. Blue Bird Corp.*, 25 F.3d 953 (10th Cir. 1994), the

Tenth Circuit vacated the district court's *dismissal* of a complaint upon entry of an order

compelling arbitration of all claims under § 4 of the Federal Arbitration Act, ruling that the

---

[13]*See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks
subject-matter jurisdiction, the court must dismiss the action.").

[14]*See also* Fed. R. Civ. P. 41(b) ("Unless the dismissal order states otherwise, a dismissal
under this subdivision (b) and any dismissal not under this rule—*except one for lack of
jurisdiction*, improper venue, or failure to join a party under Rule 19—operates as an
adjudication on the merits." (emphasis added))

proper remedy was entry of a stay of proceedings pursuant to § 3 of the Act.[15]  Thus, the

controlling authority in this Circuit runs directly contrary to the authority cited by Morinda in

support of its September 20th motion to dismiss.[16]  Nevertheless, Morinda devoted twelve pages

---

[15]Another district court recently pointed out the disparity between the views expressed in
*Adair* and *Alford*:

> There is a split in the federal courts of appeals on the issue of whether the
> dismissal of an action is permitted by the Federal Arbitration Act. *Compare
> Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10
> (4th Cir. 2001) ("Notwithstanding the terms of § 3, however, dismissal is a proper
> remedy when all of the issues presented in a lawsuit are arbitrable."), and *Green v.
> Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000) ("The weight of authority
> clearly supports dismissal of the case when all of the issues raised in the district
> court must be submitted to arbitration."), and *Alford v. Dean Witter Reynolds,
> Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (holding that section three of the FAA
> "was not intended to limit dismissal of a case in the proper circumstances."), and
> *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988) (holding
> that section three of the FAA does not limit a district court's authority to grant a
> dismissal of a case), *with Cont'l Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727, 732
> n. 7 (7th Cir. 2005) ("We have noted that the proper course of action when a party
> seeks to invoke an arbitration clause is to stay the proceedings pending arbitration
> rather than to dismiss outright.") (citing *Tice v. Am. Airlines, Inc.*, 288 F.3d 313,
> 318 (7th Cir. 2002)), and *Lloyd v. HOVENSA, L.L.C.*, 369 F.3d 263, 268–69 (3rd
> Cir. 2004) (holding that "the plain language of § 3 affords a district court no
> discretion to dismiss a case where one of the parties applies for a stay pending
> arbitration."), and *Adair Bus Sales, Inc. v. Blue Bird Corp.*, 25 F.3d 953, 955
> (10th Cir. 1994) (holding that district court erred in dismissing case in which
> defendant moved for a stay pending arbitration under 9 U.S.C. § 3, and should
> have instead entered stay). . . .

*West Liberty Foods, L.L.C. v. Moroni Feed Co.*, 753 F. Supp. 2d 881, 889-90 (S.D. Iowa 2010)
(quoting *Precision Press Inc. v. MLP U.S.A., Inc.*, 620 F. Supp. 2d 981, 995 (N.D. Iowa 2009)).
   A few minutes spent with *Alford* using either *KeyCite* (Westlaw) or *Shepard's Citations*
(LexisNexis) quickly points up the direct conflict between the Fifth and Tenth Circuits on the
FAA dismissal issue as delineated in the *West Liberty Foods* opinion.

[16]Rule 3.3(a) of the Utah Rules of Professional Conduct states that "[a] lawyer shall not
knowingly: . . . (2) fail to disclose to the tribunal legal authority in the controlling jurisdiction
known to the lawyer to be directly adverse to the position of the client and not disclosed by

(continued...)

of its fourteen-page memorandum in support of its September 20th motion to arguing for

dismissal for lack of subject matter jurisdiction.[17]

    Almost as an afterthought, Morinda then devoted one page of its memorandum to

suggesting that "should the Court not be inclined to dismiss this case, at the very least, the court

should compel arbitration," and that "all proceedings in this Court should be stayed pending the

Court's determination of the arbitrability of this dispute" pursuant to the Utah Uniform

--------

[16](...continued)
opposing counsel . . . ."  Comment 4 to Rule 3.3 elaborates on this point:

> [4] Legal argument based on a knowingly false representation of law constitutes
> dishonesty toward the tribunal.  A lawyer is not required to make a disinterested
> exposition of the law, but must recognize the existence of pertinent legal
> authorities.  Furthermore, as stated in paragraph (a)(2), an advocate has a duty to
> disclose directly adverse authority in the controlling jurisdiction that has not been
> disclosed by the opposing party.  The underlying concept is that legal argument is
> a discussion seeking to determine the legal premises properly applicable to the
> case.

This standard bears directly upon the conduct of counsel before this court because "All attorneys
practicing before this court, whether admitted as members of the bar of this court, admitted pro
hac vice, or otherwise as ordered by this court, are governed by and must comply with . . .  the
Utah Rules of Professional Conduct, as revised and amended and as interpreted by this court."
DUCivR 83-1.1(g).
    Also pertinent is Fed. R. Civ. P. 11(b), which governs counsel's representations to the
court:

> By presenting to the court a pleading, written motion, or other paper—whether by
> signing, filing, submitting, or later advocating it—an attorney . . . certifies that to
> the best of the person's knowledge, information, and belief, formed after an
> inquiry reasonable under the circumstances:
> * * * *
> (2) the claims, defenses, and other legal contentions are warranted by existing law
> or by a nonfrivolous argument for extending, modifying, or reversing existing law
> or for establishing new law; . . . .

[17](Morinda Sept. 20th Mem. at 1-12.)  Page fifteen of the memorandum was solely a
signature page.

Arbitration Act, Utah Code Ann. § 78B-11-108.[18]

**The Question of Arbitrability**

Although the Supreme Court has long recognized and enforced a "liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983),[19] it has also "made clear that there is an exception to this policy: The question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the *'question of arbitrability*,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *AT & T Tech., Inc. v. Communications Workers*, 475 U.S. 643, 649 (1986) (emphasis supplied by Court)).

As the Supreme Court has pointed out, "[a]bsent some ambiguity in the agreement, . . . it is the language of the contract that defines the scope of disputes subject to arbitration." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (citing *Mastrobuono v. Shearson Lehman*

---

[18](Morinda Sept. 20th Mem. at 13.) Morinda's September 20th motion invoked the Federal Arbitration Act as well, but its memorandum did not discuss the federal Act at all.

[19]As Justice White explains, the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16,

> was originally enacted in 1925, 43 Stat. 883, and then reenacted and codified in 1947 as Title 9 of the United States Code. Its purpose was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts.

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991) (citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 219-220 & n.6 (1985), and *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 610 n.4 (1974)). Section 2 of the FAA "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts . . . ." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006).

*Hutton, Inc.*, 514 U.S. 52, 57 (1995) ( "[T]he FAA's proarbitration policy does not operate

without regard to the wishes of the contracting parties")).  And "nothing in the statute authorizes

a court to compel arbitration of any issues, or by any parties, that are not already covered in the

agreement."  *Waffle House*, 534 U.S. at 289.

> The FAA directs courts to place arbitration agreements on equal footing with
> other contracts, but it "does not require parties to arbitrate when they have not
> agreed to do so."  *Volt Information Sciences, Inc. v. Board of Trustees of Leland
> Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488
> (1989). . . .  Because the FAA is "at bottom a policy guaranteeing the enforcement
> of private contractual arrangements," *Mitsubishi Motors Corp. v. Soler
> Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625, 105 S.Ct. 3346, 87 L.Ed.2d 444
> (1985), we look first to whether the parties agreed to arbitrate a dispute, not to
> general policy goals, to determine the scope of the agreement.  *Id.*, at 626, 105
> S.Ct. 3346.  While ambiguities in the language of the agreement should be
> resolved in favor of arbitration, *Volt*, 489 U.S., at 476, 109 S.Ct. 1248, we do not
> override the clear intent of the parties, or reach a result inconsistent with the plain
> text of the contract, simply because the policy favoring arbitration is implicated.
> "Arbitration under the [FAA] is a matter of consent, not coercion." *Id.*, at 479,
> 109 S.Ct. 1248.

*Id.* at 293, 294 (citation omitted); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388

U.S. 395, 404, n. 12 (1967) ("[T]he purpose of Congress in 1925 was to make arbitration

agreements as enforceable as other contracts, but not more so").

As the Court explained more recently in *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624

(2009),

> Section 2—the FAA's substantive mandate—makes written arbitration
> agreements "valid, irrevocable, and enforceable, save upon such grounds as exist
> at law or in equity for the revocation of a contract."  That provision creates
> substantive federal law regarding the enforceability of arbitration agreements,
> requiring courts "to place such agreements upon the same footing as other
> contracts." *Volt Information Sciences, Inc. v. Board of Trustees of Leland
> Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488
> (1989) (internal quotation marks omitted).  Section 3, in turn, allows litigants
> already in federal court to invoke agreements made enforceable by § 2.  That

provision requires the court, "on application of one of the parties," to stay the action if it involves an "issue referable to arbitration under an agreement in writing."  9 U.S.C. § 3.

*Id.* at 629-30 (footnote omitted).

Clearly, it is for the court to determine whether under the terms of their contract, the parties have made an enforceable agreement to arbitrate a particular dispute, and to enforce their agreement to do so according to its terms, either by compelling arbitration under § 4 of the FAA or staying litigation in favor of arbitration under § 3, or both.

Conceding at the outset that arbitrability was a question for the court to decide, Morinda argued that the plaintiffs' *claims* were covered by their arbitration agreement because they arose from the same contracts: "Plaintiffs' breach of contract claims fall squarely within the scope of the arbitration agreements because these claims allege breaches of the very [Real Estate Purchase Contracts] which contain the agreements."[20]  Yet the arbitration language of the parties' agreement provided that:

> **15. Dispute Resolution.**  The parties agree that any dispute arising prior to or after Closing, related to this Contract, whether based on a theory of tort, contract or warranty shall first be submitted to mediation through a mediation provider mutually agreed upon by the parties. . . . If mediation fails, the parties agree that all disputes arising out of or relating to this Contract or the Property, whether based on a theory of tort, contract or warranty shall then be submitted to mandatory binding arbitration . . . .

The parties' contractual duty to arbitrate thus turned on the existence of a "dispute" arising out of or relating to the contracts, not merely the making of a "claim" based on the contracts.

The plaintiffs' pleaded claims alleged that Morinda had defaulted on its obligations under their Real Estate Purchase Contracts.  Morinda's memoranda supporting its September 20th

---

[20](Morinda Sept. 20th Motion at 2; Morinda Sept. 20th Mem. at 2 (same).)

-10-

motion nowhere squarely state that Morinda actually *disputed* the plaintiffs' allegations of default; Morinda argued only that the plaintiffs' *claims* of default arose out of the contracts and were thus arbitrable under the language of Section 15 quoted above.[21]

Discerning a genuine distinction between a claim and a dispute, this court inquired as to the existence of an actual "dispute" concerning Morinda's alleged default that would be referable to arbitration under that contractual language, in contrast to an uncontroverted allegation of default that would leave nothing to arbitrate in light of the contracts' exclusive remedy provision as to default.[22]  At the November 19, 2010 hearing on Morinda's September 20th motion, the court discussed the possibility of proceeding with limited discovery to explore whether default was genuinely in dispute, and invited counsel to submit supplemental memoranda examining the

---

[21](*See* Morinda Sept. 20th Mem., *passim*; Defendant Morinda Properties Weight Parcel, LLC, Reply Memorandum in Support of Motion to Dismiss, or, Alternatively, to Compel Arbitration and Stay Judicial Proceedings, filed November 8, 2010 (CM/ECF No. 11) ("Morinda Sept. 20th Reply"), *passim*.)  Morinda's ten-page reply memorandum dealt exclusively with the issue of waiver—with an final paragraph pressing Morinda's entitlement to attorney's fees. Arbitrability itself was not addressed.

Morinda's sixteen-page post-hearing supplemental memorandum similarly focused on reconciling the Real Estate Purchase Contracts' arbitration and default provisions, noting in passing that "Plaintiffs do not dispute that their *claim* is subject to, and within the scope, of the mandatory arbitration provision," again equating the plaintiffs' *claims* with an actual *dispute* within the language of Section 15 of the contracts.  (Defendant Morinda Properties Weight Parcel, LLC, Supplemental Memorandum of Law in Support of Motion to Compel Arbitration and Stay Judicial Proceedings, filed December 6, 2010 (CM/ECF No. 12) ("Morinda Supp. Mem."), at 5 n.1.)

[22]Section 16 of the parties' contracts provided that "[i]f [Morinda] defaults, [Plaintiffs] may, as [their] sole and exclusive remedies, terminate [the Contracts] by written notice to [Morinda], in which event the Earnest Money Deposit and the Additional Earnest Money Deposit . . . shall be returned to [Plaintiffs] and the parties shall be released of all further duties and obligations hereunder."

arbitration and exclusive remedy provisions, which they did.[23]

At least before this court, Morinda proved very reluctant to assert in writing (pleaded in an answer, or otherwise) that it actually *disputed* the plaintiffs' allegations of default—purportedly for fear of waiver of the right to arbitrate, even though Morinda cited and quoted from a Tenth Circuit case in which that court *rejected* the argument that a party waived its right to arbitration by participating in court litigation for several months after answering the complaint before seeking an order compelling arbitration.[24]

In striking contrast, at page 30 of its Opening Brief on appeal, Morinda states: "The parties clearly have a dispute.  Plaintiffs allege that Morinda breached the REPCs and Morinda contends it did not."   Had Morinda said as much in a simple, straightforward motion to compel arbitration filed with this court in the first instance, the existence of an arbitrable dispute could readily have been determined, obviating the need for this court's January 24, 2011 Order and for Morinda's appeal of that order to the Tenth Circuit, as well as the added expenditure of attorney time—and the corresponding accrual of attorney's fees—that followed.[25]

---

[23](Transcript of Hearing, dated November 19, 2010 ("Tr. 11/19/10"), at 7:2-10:20, 26:16-42:24; *see id.* at 33:23-34: ("THE COURT: I'm interested in the question of default in reference to the question as to whether the questions remaining go to arbitration.  If there's an existing default, there's no need to arbitrate.")

[24](Morinda Sept. 20th Mem. at 11 (quoting *Hill v. Ricoh Americas Corp.*, 603 F.3d 766, 775-76 (10th Cir. 2010)); *see also* Morinda Sept. 20th Reply at 2 ("The Tenth Circuit has only found waiver in circumstances very different and far more compelling than those at issue.")

[25]Morinda now points to introductory language in its earlier supplemental memorandum saying that "[w]hether Morinda failed to meet the substantial completion deadline set forth in the REPCs is such a dispute," (Morinda Supp. Mem. at 2), but nothing about that lone statement signaled a departure from Morinda's prior assertion that plaintiffs' *claims*, without more, were arbitrable under Section 15—an assertion echoed three pages later in the same supplemental

(continued...)

-12-

On January 24, 2011, this court denied the motion to dismiss or alternatively, to compel arbitration because (1) first and foremost, dismissal was plainly unwarranted on jurisdictional grounds; (2) the language of Section 15 of the Real Estate Purchase Contracts explicitly refers to "disputes" rather than "claims"; and (3) Morinda had not averred in writing the existence of an actual "dispute" concerning the alleged default that was referable to arbitration under that express language, whether in an answer or otherwise.[26]

**Attorney's Fees Awards**

Pursuant to the court of appeals' mandate and the applicable Utah law, this court is tasked with determining whether in fact "the fees and costs sought by Morinda are reasonable because they were necessary to obtain an order compelling the parties to arbitrate," as Morinda now asserts.[27]

As the Utah Supreme Court has explained,

Where the parties have agreed by contract to the payment of attorney fees, the court may award reasonable fees in accordance with the terms of the parties' agreement. The amount to be awarded is largely within the sound discretion of the trial court, but such factors should be considered as the relationship of the fee to the amount recovered, the novelty and difficulty of the issues involved, the

---

[25](...continued)
memorandum, (*id.* at 5 n.1). (*See* Defendant's Supplemental Memorandum in Support of Motion for Entry of Judgment Awarding Attorneys' Fees and Costs Pursuant to Order of Tenth Circuit Court of Appeals, file April 3, 2012 (CM/ECF No. 55), at 2.)
The existence of a defined "dispute" floats in space until Morinda reached Denver, where the existence of such a dispute was frankly acknowledged and indeed, asserted. This court notes the lack of any semblance of such candor on the part of counsel in the papers presented here.

[26](*See* Order, filed January 24, 2011 (CM/ECF No. 16).)

[27](Motion to Refer Parties to Arbitration and for Entry of Judgment Awarding Attorney's Fees and Costs Pursuant to Order of Tenth Circuit Court of Appeals," filed November 23, 2011 (CM/ECF No. 38), at 3.)

overall result achieved and the necessity of initiating a lawsuit to vindicate rights under the contract.

*Trayner v. Cushing*, 688 P.2d 856, 858 (Utah 1984) (footnotes omitted) (citing *Turtle Mgmt., Inc. v. Haggis Mgmt., Inc.*, 645 P.2d 667 (Utah 1982)).  In *Dixie State Bank v. Bracken*, 764 P.2d 985, 990 (Utah 1988), the Utah Supreme Court opined that in determining a reasonable attorney's fee, a court should find answers to four questions:

> 1. What legal work was actually performed?
>
> 2. How much of the work performed was reasonably necessary to adequately prosecute the matter?
>
> 3. Is the attorney's billing rate consistent with the rates customarily charged in the locality for similar services?
>
> 4. Are there circumstances which require consideration of additional factors, including those listed in the Code of Professional Responsibility?
>
> It is important to note that with this analysis, what an attorney bills or the number of hours spent on a case is not determinative.  *See Cabrera v. Cottrell*, 694 P.2d at 624–25. The appropriateness of the work actually performed and of the attorney's billing rate is evaluated before a reasonable fee is set.

764 P.2d at 990 (footnotes omitted).[28]  Moreover, fees provided for by contract are "allowed only

---

[28]In a footnote, the court in *Dixie State Bank* referenced factors listed in Rule 1.5(a) of the Utah Rules of Professional Conduct—then newly adopted—as relevant to the reasonableness determination:

> (a) A lawyer shall not make an agreement for, charge or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:
>
> (a)(1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly;
>
> (a)(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(continued...)

-14-

in accordance with the terms of the contract." *Id.* at 988; *Turtle Mgmt., Inc. v. Haggis Mgmt., Inc.*, 645 P.2d 667, 671 (Utah 1982).

**Morinda's Attorney's Fee Request**

Morinda's motion for a judgment awarding attorney's fees seeks **$112,817.50** for the expenditure of "attorney time relating to Morinda's motion to compel arbitration and the subsequent appeal of this Court's denial of that motion," plus costs of **$5,416.67**, notwithstanding the fact that Morinda was actually billed **$86,189.50** for that same effort.[29] Counsel for Morinda argues that "the Firm's bills to Morinda reflect a discount provided to Morinda, that . . . was negotiated in light of the Firm's long-standing relationship with Morinda as well as the volume of matters assigned by Morinda," and that "plaintiffs should not benefit from this negotiated discount" and should thus pay Morinda's "reasonable attorney fees" under Section 17 at counsel's higher standard billing rates, averred to be as much as $460-$485 per

---

[28](...continued)
(a)(3) the fee customarily charged in the locality for similar legal services;

(a)(4) the amount involved and the results obtained;

(a)(5) the time limitations imposed by the client or by the circumstances;

(a)(6) the nature and length of the professional relationship with the client;

(a)(7) the experience, reputation and ability of the lawyer or lawyers performing the services; and

(a)(8) whether the fee is fixed or contingent.

[29](*See* Affidavit of Attorney's Fees and Costs, filed October 25, 2011 (CM/ECF No. 37) ("Kaye Aff."), at 4 ¶¶ 14, 16.)

-15-

hour.[30]

_____

[30](Kaye Aff. at 3-5 ¶¶ 12-17.)  In reply to the plaintiffs, Morinda's counsel argues that
*Kaelamakia, Inc*. v. *Kaelamakia*, 2009 UT App 148 ¶¶ 9-11, 213 P.3d 13, "is not dispositive."

>    While the Utah Court of Appeals held a contingency fee agreement capped the
>    possible recovery, the court also observed that "[b]ecause the party ultimately
>    paying the attorney fee award is not a party to the contingency fee agreement, the
>    agreement is not determinative when calculating the appropriate amount of an
>    attorney fee award." *Id.* ¶ 11. Thus, whether a reasonable recovery may exceed a
>    non-contingent, discounted fee arrangement does not appear to have been ruled
>    upon by the Utah courts.

(Reply Memorandum of Law in Support of Motion for Entry of Judgment Awarding
Supplemental Request for Attorneys' Fees and Costs Pursuant to Order of Tenth Circuit Court of
Appeals, filed June 1, 2012 (CM/ECF No. 65), at 11.)  Indeed, the *Kaelamakia* court ruled that

>    for much this same reason--that the party paying fees never had the opportunity to
>    participate in the setting of fees while the party ultimately receiving payment did
>    have the opportunity to negotiate an acceptable payment for its services--it is
>    sensible to set the amount agreed upon as a cap on the attorney fee award.

2009 UT App 148, at ¶ 11 (citing *Jones, Waldo, Holbrook & McDonough v. Dawson*, 923 P.2d
1366, 1375 (Utah 1996)).  And the *Kaelamakia* court explained why:

>    We see no case law, and Plaintiff points to none, that would support awarding
>    attorney fees for an amount more than the amount a party has negotiated to pay its
>    attorney. . . .
>    ¶12  Further, we recognize "the public policy that the basic purpose of
>    attorney fees is to indemnify the prevailing party and not to punish the losing party
>    by allowing the winner a windfall profit."  *Softsolutions, Inc. v. Brigham Young
>    Univ.*, 2000 UT 46, ¶ 51, 1 P.3d 1095 (citing *Dawson*, 923 P.2d at 1375
>    (indicating attorney fee awards are means to "'vindicate personal claims'" rather
>    than means to "'generate fees'")).

*Id.* at ¶¶ 11-12 (footnote omitted) (citing *Florida Patient's Comp. Fund v. Rowe*, 472 So. 2d
1145, 1151 (Fla. 1985) (observing that "in no case should the court-awarded fee exceed the fee
agreement reached by the attorney and his client.")).
    In *Softsolutions*, the Utah Supreme Court explicitly rejected a market-rate formula in
fixing the amount of attorney's fees awarded to a prevailing party who had been represented
solely by its salaried in-house counsel, it being "convinced that a cost-plus rate is the more
reasonable measure of attorney fees to in-house counsel, and is consistent with the public policy
                                                                        (continued...)

Counsel for Morinda billed nearly forty hours of attorney time for preparation of the September 20th motion and supporting memoranda, including the reply.[31]  Counsel expended another twenty-three hours preparing for and attending the November 19th hearing, as well as doing follow-up research on the "scope and enforceability of arbitration clause."[32]  This court having requested supplemental briefing concerning reconciliation of the contractual default and arbitration provisions at that hearing, counsel subsequently billed twenty-eight additional

---

[30](...continued)
that the basic purpose of attorney fees is to indemnify the prevailing party and not to punish the losing party by allowing the winner a windfall profit."  2000 UT 46, at ¶ 51, 1 P.3d at 1107.

The Tenth Circuit captured the essence of these recent Utah cases in *ClearOne Commc'ns, Inc. v. Biamp Sys.*, 653 F.3d 1163, 1185 (10th Cir. 2011):

> As the Utah courts have explained, "'the basic purpose of attorney fees is to indemnify the prevailing party and not to punish the losing party by allowing the winner a windfall of profit.'"  *Kealamakia, Inc. v. Kealamakia*, 213 P.3d 13, 17 (Utah Ct. App. 2009) (quoting *Softsolutions, Inc. v. Brigham Young Univ.*, 1 P.3d 1095, 1107 (Utah 2000)).  Indeed, when addressing a separate issue in its objection to ClearOne's motion for attorneys' fees, Biamp recognized that "an award of attorneys' fees is designed to make a plaintiff whole by shifting the cost of litigation" . . . .

Counsel for Morinda—like counsel in *Kealamakia*—cites no case law that would support awarding contractual attorney fees exceeding the amount that Morinda has negotiated to pay its attorneys.  Other than attempting to brush aside *Kealamakia*, Morinda's fee request memoranda shed no meaningful light on the recent Utah cases.  Remembering "that legal argument is a discussion seeking to determine the legal premises properly applicable to the case," omissions of this kind prove troubling.  *See supra* note 16.

[31](Transcript of Hearing, dated March 28, 2012 ("Tr. 3/28/12"), at 20:5-25:14; *see* Exhibit "2" to Kaye Aff. (invoices for October 18, November 17 & December 7, 2010).)  The December 7, 2010 invoice also reflects that on November 8, 2010—the day Morinda's reply memorandum was filed—some portion of 2.00 hours was spent on "legal research re whether dismissal or staying action is appropriate remedy."  There is no indication whether that research led counsel to the Tenth Circuit's *Adair* opinion; counsel did not call that opinion to this court's attention at the November 19th hearing or otherwise.

[32](*Id.*; *see* Exhibit "2" to Kaye Aff. (invoice for December 7, 2010).)

attorney hours for the preparation of Morinda's supplemental memorandum.[33]

Following the entry of this court's January 24, 2011 Order, counsel expended 7.5 hours reviewing that order and preparing to file a notice of appeal.[34]  In the two months that followed, counsel billed for nearly forty hours of attorney time, primarily related to pursuing Morinda's appeal (including attendance at two mandatory mediation sessions at the court of appeals), but also involving preparation of a motion to stay in response to plaintiffs' entry of a default certificate against Morinda while the appeal was pending,[35] which continued into the next month. Counsel expended nearly 110 additional hours in two months, drafting Morinda's brief on appeal and dealing with the motion to stay, which was heard by this court on May 25, 2011.[36]  This court denied the motion to stay as redundant because this court was already divested of jurisdiction over the merits by reason of Morinda's non-frivolous appeal under 9 U.S.C. § 16(a)(1).[37]

Through the end of June 2011, counsel for Morinda expended another forty-nine hours, reviewing the plaintiffs' response brief and preparing and filing Morinda's reply brief.[38]

To assist in evaluating whether the attorney time billed by counsel for Morinda was reasonably necessary to adequately prosecute the matter entrusted to them, this court ordered

---

[33](*Id.* at 25:15-27:18; *see* Exhibit "2" to Kaye Aff. (invoice for January 26, 2011).)

[34](*Id.* at 27:18-30:5; *see* Exhibit "2" to Kaye Aff. (invoice for February 23, 2011).)

[35](*Id.* at 30:12-36:25; *see* Exhibit "2" to Kaye Aff. (invoices for March 21& April 26, 2011).)

[36](*Id.* at 37:4-42:22; *see* Exhibit "2" to Kaye Aff. (invoices for May 26 & June 16, 2011).)

[37](*See* Order, filed May 26, 2011 (CM/ECF No. 30).)

[38](Tr. 3/28/12, at 43:3-44:15; *see* Exhibit "2" to Kaye Aff. (invoices for March 21& April 26, 2011).)

counsel for all parties to supplement this court's record in this case with copies of all materials filed with the court of appeals.[39]

### Apportionment of Attorney's Fees

"An award of attorney fees must be based on the evidence and supported by findings of fact." *Cottonwood Mall Co. v. Sine*, 830 P.2d 266, 268 (Utah 1992). A party who seeks an award of attorney fees, therefore, has the burden of producing evidence to buttress the requested award, including "the hours spent on the case, the hourly rate or rates charged for those hours, and usual and customary rates for such work." *Id.*; *see Hal Taylor Assoc. v. Unionamerica, Inc.*, 657 P.2d 743, 750-51 (Utah 1982). When the evidence presented is insufficient, an award of attorney fees cannot stand. *See Dixie State Bank*, 764 P.2d at 989.

> In this regard, we have mandated that a party seeking fees must allocate its fee request according to its underlying claims. *See Cottonwood Mall*, 830 P.2d at 269-70. Indeed, the party must categorize the time and fees expended for "(1) successful claims for which there may be an entitlement to attorney fees, (2) unsuccessful claims for which there would have been an entitlement to attorney fees had the claims been successful, and (3) claims for which there is no entitlement to attorney fees." *Id.* at 269-70; *see also Valcarce v. Fitzgerald*, 961 P.2d 305, 317 (Utah 1998) . . . .

*Foote v. Clark*, 962 P.2d 52, 55 (Utah 1998). "While a trial court may, in its discretion, deny fees altogether for failure to allocate, *see Commerce Fin. v. Markwest Corp.*, 806 P.2d 200, 204 n.4 (Utah Ct. App. 1990), it may not award wholesale all attorney fees requested if they have not been allocated as to separate claims and/or parties." *Valcarce v. Fitzgerald*, 961 P.2d 305, 318 (Utah 1998).

In this case, the court of appeals understood that "Morinda seeks an award of fees and

---

[39](Order, filed March 29, 2012 (CM/ECF No. 51).)

costs in connection with its efforts to compel arbitration" under the terms of its contracts, and it

instructed this court to determine the amount of that award.  Yet nothing in the language of

Morinda's contracts or in the express terms of the court of appeals' mandate requires an award of

fees incurred in connection with Morinda's ill-conceived and fruitless motion to dismiss this case

for lack of subject matter jurisdiction—a motion which indeed worked at cross-purposes with

Morinda's effort to enforce its arbitration agreements.[40]  To the contrary, the Utah Supreme Court

instructs that "a party is entitled only to those fees attributable to the successful vindication of

contractual rights within the terms of their agreement," *Trayner*, 688 P.2d at 858 (footnote

omitted)—in this case, Morinda's contractual right to resolve the parties' default dispute in

arbitration.

Consistent with the governing Utah law, then, this court must draw some meaningful

distinction between the requested attorney's fees "attributable to the successful vindication of

---

[40]Morinda's jurisdictional theory misapprehended the very nature of the mechanism
created by § 4 of the Federal Arbitration Act.  As the Supreme Court made abundantly clear in
2009, a federal district court must have subject matter jurisdiction of the parties' underlying
dispute before it may enter an order compelling arbitration pursuant to § 4.  *See Vaden v.
Discover Bank*, 556 U.S. 49, 66 (2009) ("we read § 4 to convey that a party seeking to compel
arbitration may gain a federal court's assistance only if, 'save for' the agreement, the entire,
actual 'controversy between the parties,' as they have framed it, could be litigated in federal
court"); *see also 1mage Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044 1048 n.6
(10th Cir. 2006) ("the Federal Arbitration Act, that act itself does not confer federal jurisdiction
over a proceeding"; rather, "there must still be an independent basis for the district court's
subject matter jurisdiction").
    A written agreement to arbitrate cannot serve to divest the court of subject matter
jurisdiction because the court must have such jurisdiction to compel arbitration under § 4 of the
Act.  Morinda's counsel conceded as much at the November 19th hearing, (*see* Tr. 11/19/10, at
39:16-21 (Mr. Kaye)), and now characterizes Morinda's Rule 12(b)(1) motion as "sort of a
throw-in argument that the case should be dismissed as well, which is something that is fairly
standard when you file a Motion to Compel."  (Tr. 3/28/12, at 14:4-6 (testimony of Mr. Kaye).)
    In effect, Morinda's attorneys are now asking to be paid between $300 and $500 an hour
for getting in their own way.

contractual rights within the terms of their agreement," and those that were not.[41]

Counsel for Morinda offers little assistance in this regard.

At the March 28, 2012 evidentiary hearing, counsel for Morinda conceded that he did not allocate the fees incurred between Morinda's successful effort to vindicate its contractual right by compelling arbitration and its failed effort through its Rule 12(b)(1) motion to obtain dismissal of this case altogether.[42]   Counsel instead seeks to minimize the significance of its jurisdictional theory—the primary footing for its September 20th motion, in which an order compelling arbitration had been posited merely as an alternative remedy:

> Q. And if you had to estimate, what percentage of the tasks that were performed can be attributed to the Motion to Dismiss and what percentage could be attributed to the Motion to Compel Arbitration?
>
> A. A very small percent.  I mean, I don't have -- I don't know if the Motion to Compel is in the materials that we have got here today, but I remember that argument being, essentially, a throw in.  And I know that Judge Jenkins was concerned that we were challenging jurisdiction, and we talked about that a lot when we were in court.  But in terms of what was in the actual brief, my recollection is that it may have consumed, you know, a page or two of the memorandum of law.
>
> Q. Just to clarify, which argument was the throw in?
>
> A. The Motion to Dismiss.
>
> Q. Okay.
>
> A. Some courts will dismiss a case on a Motion to Compel. That happens and my firm actually has expertise in arbitration agreements and their enforceability, and

---

[41]Should Morinda's counsel now be compensated at premium rates ($340-$460/hour) for time spent arguing a position before this court directly contrary to controlling Tenth Circuit precedent, namely the *Adair* case?  Probably not.  *Cf. Foote*, 962 P.2d at 57 (noting that "the court should not reimburse counsel for time spent pursuing ungrounded and infeasible theories").

[42](Tr. 3/28/12, at 13:8-16.)

that's why we included it. But it is never a primary part of the argument because
the gist of what you are trying to accomplish, on a Motion to Compel Arbitration,
is to get to arbitration, and whether the case is stayed or dismissed is not -- it is
not really that important. . . .   You know, it's typically stayed, pending the result
of the arbitration.

(Tr. 3/28/12, at 19:3-20:5 (testimony of Mr. Kaye); *see also* Tr. 3/28/12 at 13:20-22 (testimony

of Mr. Kaye) ("the Motion to Dismiss, which was contained in the Motion to Compel, was a very

small part of that argument"); *id.* at 14:7-9 ("The primary thrust of the motion was to seek to

compel arbitration, the request to dismiss was incidental to that").)

As explained above, Morinda's September 20th motion was framed first as a Rule

12(b)(1) motion to dismiss; the supporting memorandum's leading argument urged dismissal for

lack of subject matter jurisdiction, followed by Morinda's "alternative" request to compel

arbitration "should the Court not be inclined to dismiss this case"—as Morinda had argued it

should in the preceding *twelve pages* of its memorandum.  Counsel for Morinda also raised its

subject-matter jurisdiction theory at the November 19th hearing,[43] but then seemingly abandoned

it midway through the argument.[44]  Yet Morinda again requested dismissal in its post-hearing

supplemental memorandum.[45]

Morinda's request for an order compelling arbitration took center stage in its appeal from

this court's January 24, 2011 Order, and necessarily so: Section 16(a)(1) of the Federal

Arbitration Act provides that an immediate appeal "may be taken from—(1) an order— (B)

---

[43](Tr. 11/19/10, at 10:21-24 (Ms. Vartabedian).)

[44](Tr. 11/19/10, at 39:16-40:1 (Mr. Kaye).)

[45]Morinda's post-hearing supplemental memorandum concluded by asking this court to
"stay or dismiss this case."   (Morinda Supp. Mem. at 16.)  The jurisdiction question was finally
put to rest by this court's January 24, 2011 Order.

denying a petition under section 4 of this title to order arbitration to proceed," but says nothing about any appeal from an order denying a Rule 12(b)(1) motion to dismiss.

**Findings**

Having reviewed the record in this case in some detail, including the supplementary appellate materials furnished by the parties, and having considered the arguments of counsel in light of the factors enumerated in *Dixie State Bank*, *Trayner*, *Foote* and related cases, the court now finds as follows:

The legal work performed by counsel for Morinda is substantially reflected in the series of invoices annexed as exhibits to Morinda's Affidavit of Attorney's Fees and Costs and described by counsel in testimony heard at the March 28th evidentiary hearing.  Much of the work consists of drafting, reviewing and editing various briefs and memoranda filed with this court or the court of appeals, and preparing for and appearing at hearings.  Much of the work performed was reasonably necessary to vindicate Morinda's contractual right to arbitration of the dispute concerning plaintiffs' allegations of default, including the formulation of responses to the plaintiffs' strained but persistent theory of waiver of arbitration, as well as specific queries by the court concerning the scope and effect of the parties' contractual arbitration provision.[46]

Based upon the very limited evidence presented,[47] the court is satisfied that the billing

---

[46]On appeal, counsel for Morinda and counsel for the plaintiffs continued to argue at length about the questions of Morinda's waiver of the right to arbitrate and whether their contracts' exclusive remedy provisions supplant the contractual arbitration provisions on issues of default.  Indeed, much of the court of appeals' September 19, 2011 Order and Judgment addresses these questions—ironically so, since this court did *not* refer to or rely on either question in the January 24, 2011 Order that was the subject of the appeal.

[47](*See* Affidavit of Ronald L. Rencher in Support of Defendant's Affidavit of Attorney's
(continued...)

-23-

rates that counsel charged Morinda for the work performed in enforcing Morinda's contractual

right to arbitration prove to be generally consistent with the rates customarily charged in this

locality for similar legal services.

To the extent there is relevant evidence in the record, this court has also considered  the

experience, reputation and ability of the lawyers performing the services, as well as the time and

effort required to obtain the relief sought, the novelty and difficulty of the legal questions

involved and the skill required to perform the legal services properly and to assist the court in

reaching a sound result.

Essentially as outlined in its own initial memorandum,[48] Morinda's burden in seeking an

order compelling arbitration pursuant to 9 U.S.C. § 4 was to establish (1) whether a valid and

enforceable arbitration agreement exists; (2) whether the parties have a dispute within the scope

of that agreement; and (3) whether there has been a waiver of the right to arbitrate.

This appears quite simple.

Both plaintiffs and Morinda acknowledged the existence of Section 15 of their Real

Estate Purchase Contracts, expressly requiring arbitration of all disputes arising out of those

contracts.  The question whether there was an arbitrable dispute appears to have run off the rails

when Morinda's September 20th motion asserted that the plaintiffs' *claims*, without more, were

---

[47](...continued)
Fees and Costs, dated October 25, 2011, annexed as Exhibit "4" to the Kaye Aff.)  Mr. Rencher
did not testify at the March 28th evidentiary hearing.
     Mr. Kaye also opined as to the reasonableness of the fees and consistency of his own
billing rates with those in the marketplace.  (*See, e.g.*, Tr. 3/28/12, at 17:11-18:11, 46:3-48:10.)

[48](*See* Morinda Sept. 20th Mem. at 7.)

referable under Section 15's "all disputes" language.[49]  Morinda's papers did not plainly state that Morinda genuinely disputed plaintiffs' allegations of default—an omission that became the sole basis for this court's provisional denial of Morinda's alternative motion to compel arbitration.  As to waiver of arbitration, the parties continued to litigate that issue at the court of appeals even after this court expressed serious doubt about it at the November 19, 2010 hearing,[50] and did not mention waiver in the January 24, 2011 Order.[51]

So, at least in one sense, the time and effort *required* to obtain the relief sought should have been less than that actually expended in this case, particularly on the protracted litigation of issues on appeal that were not germane to the specific order under review.[52]  But both sides appear to have played roughly equal parts in that process, and misguided persistence on the part

---

[49]This disparity may have resulted from counsel's reliance on language in *DeGroff v. Masotech Forming Tech.—Fort Wayne*, 179 F. Supp. 2d 896, 902 (N.D. Ind. 2001), discussing "whether the claims fall within the scope of the agreement."  Of course, *DeGroff* involved an arbitration provision that spoke of claims, not disputes: "'Arbitration will be the sole and exclusive remedies for any *claims* covered by the Corporate Dispute Resolution Policy and I agree not to pursue any such *claims* in Court through a judge or a jury.'"  *Id.* at 899 (emphasis added).

Counsel's focus on the arbitrability of plaintiffs' *claims* arising out of Morinda's contracts rather than the existence of an actual referable *dispute* as to the alleged default only served to protract the matter.

[50](Tr. 11/19/10, at 8:6-9, 11:14-21, 26:16-20 (the Court).)

[51]Indeed, the court of appeals proceeded to rule on the waiver issue because Morinda raised the issue itself.  *See Robert Lamkin, et al., v. Morinda Properties Weight Parcel, LLC*, Case No. 11-4022 (10th Cir., decided Sept. 19, 2011), slip op. at 8 ("Morinda clearly put the issue into contention on this appeal in its opening brief").

[52]The court of appeals even ruled on the exclusive remedy question as being "the reasoning articulated by the district court at the hearing," *id.* at 5, or "the district court's initial rationale" for denying Morinda's motion, *id.* at 6, apparently not realizing that this court was persuaded by Morinda's argument that the contractual provisions did *not* conflict and thus did not deny Morinda's motion on that basis.

of one required a corollary persistence on the part of the other.

Taking all of the aforementioned factors into account, this court finds that Morinda should be awarded attorney's fees and costs in an amount measured by the attorney's fees and costs actually billed by its counsel for the work performed in obtaining an order compelling arbitration, as "its costs and reasonable attorney fees" pursuant to Section 17 of its Real Estate Purchase Contracts, less the following downward adjustment.

Of the forty hours spent by counsel on the September 20th motion and memoranda, nearly twenty hours were expended preparing the initial moving papers and propounding counsel's most serious argumentative errors. This court finds counsel's misapprehension of the essential relationship between a district court's subject matter jurisdiction and the operation of the Federal Arbitration Act—so clearly delineated in the Supreme Court's recent *Vaden* opinion, among others—to be disconcerting, to say the least. Even more troubling is counsel's misreading of and misplaced reliance on the Fifth Circuit's *Alford* opinion, particularly in light of the Tenth Circuit's *Adair* opinion holding directly to the contrary. As potentially misleading as they were, counsel's initial moving papers at best provided only limited assistance to the court on the key question of arbitrability. Thus, the court finds that at least a portion of the fees incurred for their preparation is not fairly "attributable to the successful vindication of contractual rights within the terms of their agreement," as required by Utah law, and that portion exceeds the "very small percent" suggested by counsel at the evidentiary hearing. This court concludes that a reduction of **$4,410**, representing **seventy-five percent (75%)** of the initial **19.6 hours** billed by counsel, is reasonable under these circumstances.

Taking that adjustment into account, Morinda shall be awarded **$81,779.50** as its

reasonable attorney's fees and **$5,416.67** as its costs, these amounts being fairly attributable to the successful vindication of contractual rights to arbitration of disputes under the terms of Section 15 of their Real Estate Purchase Contracts.

### Morinda's Supplemental Request for Attorney's Fees and Costs

Morinda's Motion for Entry of Judgment Awarding Supplemental Request for Attorney's Fees and Costs Pursuant to Order of Tenth Circuit Court of Appeals, filed April 18, 2012 (CM/ECF No. 56), seeks an additional award of attorney's fees and costs for work performed after the court of appeals issued its Order and Judgment on September 19, 2011.[53]  Counsel submits that the additional "fees and costs sought by Morinda are reasonable because they were necessary to obtain an order compelling the parties to arbitrate."  (*Id.* at 2.)

In fact, "an order compelling the parties to arbitrate" was expressly required by the court of appeals' mandate in this case,[54] without need of further motion practice before this court.

The first document submitted by Morinda to this court following remand was its Affidavit of Attorney's Fees and Costs, filed on October 25, 2011.  Indeed, almost all of the eighty-or-so hours of work billed to Morinda by counsel in the "supplemental" period after September 19th concerned *attorney's fees*—discussions with opposing counsel concerning the fee amount, preparation of the affidavits and request for an award of those fees, as well as Mr.

---

[53](*See* Supplemental Affidavit of Attorney's Fees and Costs, filed April 18, 2012 (CM/ECF No. 57).)

[54]The court of appeals' mandate was docketed by this court on October 11, 2011 (CM/ECF No. 36), signifying that the matter had been returned to this court for disposition.

Kaye's preparation for and testimony at the March 28th evidentiary hearing.[55]

The actual Order of Referral to Arbitration & Stay of Judicial Proceedings was drafted and entered by this court on December 13, 2011, before the majority of counsel's "supplemental" fees had yet been incurred.[56]

Later, after almost all of the "supplemental" fees had been incurred, counsel for Morinda testified as follows at the March 28th evidentiary hearing:

Q.  Did you charge any fees for Morinda's preparation of the fee affidavit?

A. No.

Q.  Why not?

A. . . . I sort of thought it would be appropriate for the fees to stop running for the plaintiff and us. . . . So I was kind of thinking we were done and wasn't going to make a big deal of it, and I still don't intend to.

Q.  So then none of the fees are included in these invoices for the briefing that was associated with –

A. No.

Q. – the affidavit?

A. Nope.

Q.  And, obviously, none of the fees incurred in preparing for that evidentiary hearing or appearing for the hearing?

---

[55](*See* Exhibit "1" to the Supplemental Affidavit of Attorney's Fees and Costs, filed April 18, 2012 (CM/ECF No. 57) (invoices for October 15, November 14, & December 7, 2011; January 31, February 27, March 27 & April 13, 2012).)

[56]Attorney time entries referencing *arbitration* are scarce.  Counsel spent approximately seven hours drafting Morinda's "Motion to Refer Parties to Arbitration and for Entry of Judgment Awarding Attorney's Fees and Costs," and another 0.6 hours reviewing the December 13, 2011 Order.  (*Id.*)  The balance of the "supplemental" fees were incurred in dealing with . . . attorney's fees.

A. No. I mean, and I have seen that done before. The problem with it is that if we submitted another fee affidavit, there would be another round of briefing. It just sort of spirals, so it's good to just say that this is the point at which we are done.

(Tr. 3/28/12, at 44:20-45:20 (testimony of Mr. Kaye).)

At that time, the court considered counsel's position to be well-taken. The same was taken into account as a factor weighing in favor of awarding substantially the amount of fees actually incurred through the conclusion of the appeal as reasonable and necessary to obtaining the relief sought, namely an order compelling arbitration.

Since the March 28th hearing, counsel and client apparently had a change of heart, and now seek an additional **$26,020** in attorney's fees for the work of counsel in substantiating their claim for the **$87,196.17** in attorney's fees and costs to be awarded as explained above.

Having examined and considered Morinda's supplemental fee request in the context of its original fee application and in the larger context of this case as a whole, this court is not persuaded that the requested "supplemental" fees are "reasonable because they were necessary to obtain an order compelling the parties to arbitrate," as counsel for Morinda insists. That goal was essentially achieved upon the issuance of the court of appeals' mandate in October 2011. At that point, the "litigation to enforce the arbitration provisions of this Contract" within the meaning of Section 17 of Morinda's contracts had essentially reached its conclusion, thus defining and delimiting "the prevailing party's" entitlement under Section 17 to "its costs and reasonable attorney fees in addition to the relief granted."[57]

---

[57]The court of appeals' mandate acknowledges as much, pointing out that "[d]etermination of the award is independent of . . . the prompt referral of the parties' underlying dispute to arbitration"—which comprises "the relief granted" through "litigation to enforce the arbitration provisions of this Contract" contemplated by Section 17, the sole basis for Morinda's

(continued...)

Remembering that "[f]ees provided for by contract . . . are allowed only in strict accordance with the terms of the contract," *Foote*, 962 P.2d at 54, Morinda's "costs and reasonable attorney fees" under Section 17 are those costs and attorney's fees reasonably and necessarily incurred in obtaining enforcement of its right to arbitration, in the amount already found by this court.

Adding what amounts to a thirty-percent premium onto Morinda's costs-and-fees claim for counsel simply having substantiated the *amount* of that claim reaches beyond the terms of Section 17 and in any event, is not reasonable under all of the facts and circumstances of this case.[58] Counsel delineated a rational boundary for Morinda's claim for "its costs and reasonable attorney fees" in his testimony at the March 28th evidentiary hearing consistent with the language of Section 17, and that boundary remains in place.

For the reasons explained above in some detail,

**IT IS ORDERED** that defendant Morinda's Motion to Refer Parties to Arbitration and for Entry of Judgment Awarding Attorney's Fees and Costs Pursuant to Order of Tenth Circuit Court of Appeals," (CM/ECF No. 38), is GRANTED, and Morinda is thereby entitled to recover **$81,779.50** as its reasonable attorney's fees and **$5,416.67** as its costs pursuant to Section 17 of its Real Estate Purchase Contracts with the plaintiffs; and

**IT IS FURTHER ORDERED** that Morinda's Motion for Entry of Judgment Awarding

---

[57](...continued)
entitlement to fees and costs.

[58]Morinda's supplemental fee request also puts counsel in the curious position of seeking "attorney's fees" for substantiating the amount of Morinda's Section 17 costs-and-fees claim, where his primary role was that of an affiant and fact witness.

Supplemental Request for Attorney's Fees and Costs Pursuant to Order of Tenth Circuit Court of

Appeals, filed April 18, 2012 (CM/ECF No. 56), is DENIED.

DATED this 16ᵗᴴ day of July, 2012.

BY THE COURT:

Bruce S. Jenkins
United States Senior District Judge